UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MATTHEW LOMAGLIO,

         Petitioner,     DECISION AND ORDER

-vs-

                   17-CV-6395 (CJS)

ANTHONY J. ANNUCCI, *as Acting
Commissioner of the New York State Department
of Corrections and Community Supervision, and,*

JEFFREY TEDFORD, *as Superintendent of the
Adirondack Correctional Facility,*

         Respondents.

_____

  The petitioner, Matthew Lomaglio ("Lomaglio"), brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Lomaglio challenges his conviction in the New York Supreme Court of course of sexual conduct against a child in the second degree, for which he was sentenced to a determinate prison term of 4 years plus 10 years of post-release supervision. Lomaglio argues that his waiver of his right to a jury trial was not knowing and intelligent, and that his trial counsel was ineffective for failing to fully explain the risks and consequences of his waiver. For the reasons discussed below, Lomaglio's petition for a writ of habeas corpus is denied.

## BACKGROUND

  The following background is drawn primarily from exhibits Lomaglio filed with his Memorandum in Support of his Petition for Writ of Habeas Corpus. Pet'r Mem. in Supp. (Ex. A – Ex. O), June 6, 2017, ECF Nos. 2-1 to 2-16.

On October 14, 2013, approximately two days before jury selection was to begin for Lomaglio's trial on charges of course of sexual conduct in the second degree and endangering the welfare of a child, the prosecution made a motion *in limine* seeking rulings with respect to evidentiary issues it anticipated would arise throughout the course of the trial. Ex. B, ¶ 2, June 6, 2017, ECF No. 2-2. Among other issues, the prosecution sought a ruling as to whether it could elicit testimony from the victim's mother and the former assistant principal of the victim's school that the victim expressed fear of Lomaglio during the course of the abuse and specifically voiced fears about being raped, which included testimony that the victim expressed his fears by telling his mother he had a dream in which he was sexually abused by Lomaglio. Ex. B. at ¶ 12. *See also*, Ex. F, June 6, 2017, ECF No. 2-6. The prosecution argued that such testimony would fall within the "prompt outcry" exception to the hearsay rule, and was therefore admissible. Ex. B at ¶ 13–22.

Two days later, on October 16, 2013, and before a ruling was issued on the prosecution's motion *in limine*, Lomaglio appeared in court and waived his right to a jury trial. Ex. C, 2, June 6, 2017, ECF No. 2-3. The trial court first addressed Lomaglio's trial counsel:

> THE COURT: [Counsel], have you had an opportunity to talk to your client about waiving his jury trial rights?
>
> [COUNSEL]: Yes, we have spoken about it at length on previous occasions. He indicated to me that he wishes to waive his right to a jury trial and proceed with your Honor as the sole fact finder of the issues to be resolved at this trial.
>
> THE COURT: . . . . Mr. Lomaglio, is what your attorney said still the position that you have this morning?
>
> [LOMAGLIO]: Yes, your Honor.

Ex. C at 2. Thereafter, the trial court engaged in an extended colloquy with Lomaglio about his jury trial rights that culminated with Lomaglio signing a written jury trial waiver, as well. Ex. C at 2–7; Ex. D, June 6, 2017, ECF No. 4. On October 18, 2013, the trial court ruled that the prosecution would be permitted to introduce the testimony of the victim's mother regarding his "prompt outcry" regarding Lomaglio's conduct, but would not be permitted to introduce the former assistant principal's testimony on that subject. Ex. F at 11.

On December 12, 2013, Lomaglio was convicted, following a bench trial, of course of sexual conduct against a child in the second degree (N.Y. Penal Law § 130.80), and endangering the welfare of a child (N.Y. Penal Law § 260.10(1)). Ex. E, 1, June 6, 2017, ECF No. 2-5. Lomaglio appealed his conviction to the appellate division of the New York Supreme Court raising multiple arguments, including that his jury trial waiver was invalid. Ex. E at 1. The appellate division affirmed Lomaglio's conviction for course of sexual conduct, but dismissed his conviction for child endangerment after the state conceded it was time-barred. *People v. Lomaglio*, 1 N.Y.S.3d 713, 717 (N.Y. App. Div., Jan. 2, 2015). With respect to the argument that Lomaglio's jury trial waiver was invalid, the appellate division stated:

> Defendant failed to preserve for our review his contention that his waiver of the right to a jury trial was not knowing, voluntary, and intelligent . . . . In any event, it is without merit . . . . A waiver of the right to a jury trial must be in writing and signed by defendant in open court in the presence of the court, all of which occurred here (see CPL 320.10[2]). [T]here is nothing in the record which would have alerted the court to the possibility that defendant was not fully aware of the consequences of the waiver . . . .

*Lomaglio*, 1 N.Y.S.3d at 716–17.

Lomaglio then filed a motion with the trial court pursuant to New York Criminal Procedure Law ("N.Y. C.P.L.") § 440.10 to vacate his course of sexual conduct conviction. Lomaglio argued that his jury trial waiver was not knowing and intelligent because he did

3

not understand the consequences that the trial court's "prompt outcry" ruling would have in his case, and that his trial counsel was ineffective for failing to inform him of these consequences. Lomaglio also sought to build the record regarding his conversations with his attorney about the jury trial waver. For instance, Lomaglio's sworn affidavit stated:

> In the lead-up to my decision to waive my right to a jury trial, I had many discussions with my [trial counsel].
>
> . . . We discussed at length the various practical benefits that might come with a decision to waive a jury trial. For example, it was explained to me that a bench trial might provide the benefit of alleviating some of the prejudice inherent in the publicity my case had received. It was explained to me that a judge would likely be able to take a more analytical approach to the proof in this case, and that this might be advantageous in light of the salacious nature of the allegations. It was explained to me that a judge would be more inclined to approach the facts of the case more dispassionately and with a greater appreciation for whether the prosecution had carried its heavy burden of proof. It was explained to me that a judge would likely be more understanding of my potential decision not to testify at trial, would not hold such a decision against me, and would generally do a better job of observing the presumption of innocence, the defendant's right to silence, and the prosecutor's burden of proof. All of this was critical in my decision-making.
>
> . . . After having discussed all of these issues with my attorney, I believed that we had discussed every important legal and practical issue that was important to my decision to waive a jury trial. I believed that I had been informed of all the important information necessary to make my decision to waive my right to a jury trial and had no reason to believe any important information or considerations had been omitted.
>
> However, I did not discuss with my attorney anything related to the interplay between my potential jury trial waiver and the potential outcome of the prosecutor's request to [sic] evidence of a "prompt complaint".
>
> . . . [My appellate counsel] has fully explained to me the importance of the "prompt complaint" issue as it related to my jury trial waiver and how, in part, the resolution of the issue provided important information regarding the court's view of the complainant's credibility.
>
> If I had been advised of this information prior to the date of my jury trial waiver, I would not have entered into the waiver and would have chosen to proceed to a jury trial.

Ex. E at 6–7.

In its decision denying Lomaglio's § 440.10 motion, the trial court held that "[b]ecause these issues were previously raised, considered, and rejected on appeal, the claims are procedurally-barred and must be denied by the Court." Ex. L, 3, June 6, 2017, ECF No. 2-13. Further, the trial court stated that even if Lomaglio's claims were not procedurally-barred, the court would deny the motion on the merits. Ex. L at 3. Specifically, the trial court explained that even accepting his factual allegations regarding his conversations with his attorney as true, Lomaglio's submissions failed to show that his jury trial waiver was not knowing and intelligent, and also failed to show that he received deficient and prejudicial representation. Ex. L at 3–11.

On June 6, 2017, Lomaglio filed the instant petition seeking a writ of habeas corpus.

## LEGAL STANDARD

Lomaglio brings his habeas corpus petition pursuant to 28 U.S.C. § 2254. The general legal principles applicable to such a claim are well-settled. Federal courts are obliged to give deference to state courts' decisions. *See Chrysler v. Guiney*, 806 F.3d 104, 117 (2d Cir. 2015) (citing The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214). "First, the exhaustion requirement ensures that state prisoners present their constitutional claims to the state courts in the first instance." *Jackson v. Conway*, 763 F.3d 115, 132 (2d Cir. 2014). "Should the state court reject a federal claim on procedural grounds, the procedural default doctrine bars further federal review of the claim, subject to certain well-established exceptions." *Id.* (citing *Wainwright v. Sykes*, 433 U.S. 72, 82–84 (1977)). For claims adjudicated on the merits in state court, a federal court may issue

a writ of habeas corpus only when the state-court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law . . . ." *Chrysler*, 806 F.3d at 117 (quoting 28 U.S.C. § 2254(d)(1)). The Supreme Court has instructed, time and again, "that AEDPA, by setting forth necessary predicates before state-court judgments may be set aside, erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *White v. Wheeler*, 577 U.S. 73, 76–77 (2015) (internal quotation marks and citation omitted).

## DISCUSSION

The Court is in possession of, and has reviewed, the full state court record, including transcripts of pretrial proceedings and the bench trial, and the papers and supporting materials from Lomaglio's direct appeal and collateral attack of his conviction.[1] As Lomaglio has not challenged the record below as inaccurate, the Court finds pursuant to 28 U.S.C. § 2254(e)(2) that an evidentiary hearing is not necessary in this matter.

In his petition, Lomaglio makes two principle arguments. First, he argues that his jury trial waiver was invalid because the trial court failed to fully explain the "relevant circumstances" and "likely consequences" of his waiver. Pet'r Mem. of Law, 11–20. Second, Lomaglio argues that his attorney did not provide "constitutionally adequate advice on the subject of the waiver." *Id.* at 21. Respondent maintains that Lomaglio's challenge to the validity of his jury trial waiver is both procedurally-barred and without merit, and that his ineffective assistance of counsel claim is likewise without merit.

---

[1] Because the crime of which Lomaglio was convicted involved the repeated sexual abuse of a child, the state court record in this action was filed under seal to protect the victim. Order, May 15, 2020, ECF No. 11.

Jury Trial Waiver

The Sixth Amendment of the United States Constitution guarantees individuals the right, "[i]n all criminal prosecutions . . . to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ." *See also* U.S. Const. Art. III, § 2 (stating the trial of all crimes, except impeachment, shall be by jury); N.Y. Const. Art. I, § 2 ("Trial by jury in all cases in which it has heretofore been guaranteed by constitutional provision shall remain inviolate forever. . . ."). Nevertheless, the right to a jury trial is a benefit granted an accused, which a defendant has the power to waive. *United States v. Sun Myung Moon*, 718 F.2d 1210, 1217 (2d Cir. 1983) (citing *Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 380 (1979)). *See also* N.Y. Const. Art. I, § 2 ("a jury trial may be waived by the defendant in all criminal cases. . . by a written instrument signed by the defendant in person in open court before and with the approval of a judge or justice of a court having jurisdiction to try the offense.").

*Procedural Default Doctrine*

Respondent argues that Lomaglio's challenge to the validity of his jury trial waiver is procedurally-barred by the procedural default doctrine, which provides that a federal habeas court generally may not review a claim on the merits, even if it is exhausted, if the state court decision rejecting that claim "rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). The state appellate court found that Lomaglio had failed to preserve the issue for appellate review because Lomaglio first argued that his jury trial waiver was invalid on direct appeal, rather than contemporaneously before the trial court. *Lomaglio*, 1 N.Y.S.3d at 716–17. Respondent maintains that this ruling is sufficient to defeat Lomaglio's

claim because "[c]ourts in this Circuit have consistently recognized the contemporaneous objection rule to be an adequate and independent state law ground sufficient to bar habeas review." Resp't Mem. of Law, 15, May 15, 2020, ECF No. 12-1.

For his part, Lomaglio denies that the state appellate court decided the issue that he raises before this Court on appeal, because the appellate court only reviewed the matters contained on the record at the time of the direct appeal. Reply, 3, May 29, 2020, ECF No. 14. *See also Lomaglio*, 1 N.Y.S.3d at 717 (stating "[T]here is nothing in the record which would have alerted the [trial] court to the possibility that defendant was not fully aware of the consequences of the waiver . . . ." (citation omitted)). Lomaglio maintains that his post-conviction § 440.10 motion was his "first opportunity for a decision regarding the constitutional meaning of his ignorance regarding the interplay between the prompt complaint decision and the jury trial waiver," but that the trial court incorrectly found that the § 440.10 motion was based on the same grounds as the appeal. Reply at 4. "As a result of this complete failure to address the merits of the federal claim," Lomaglio argues, "this Court may review the issue presented in the . . . § 440 motion *de novo*."

The Court agrees with Respondent that Lomaglio's claim regarding his jury trial waiver is barred by the procedural default doctrine. Even if a petitioner's claim was exhausted in state court, a federal habeas court generally may not review a claim on the merits if the state court decision rejecting that claim "rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). "This rule applies whether the state law ground is substantive or procedural." *Id*.

In the present case, the appellate court rejected Lomaglio's claim that his waiver of the right to a jury trial was not knowing, voluntary, and intelligent on the grounds that he failed to preserve the argument for appellate review. *Lomaglio,* 1 N.Y.S.3d at 717 (citing, *inter alia, People v. White*, 842 N.Y.S.2d 661 (N.Y. App. Div. 2007)). With respect to the trial court's allocution with a defendant regarding his jury trial waiver, if the defendant does not challenge the adequacy of the allocution before the trial court, his argument is unpreserved for appellate review. *See, e.g., People v. Lumpkins*, 782 N.Y.S.2d 804, 805 (N.Y. App. Div. 2004) (citing, *inter alia, People v. Magnano*, 551 N.Y.S.2d 131, 132 (N.Y. App. Div. 1990); *see also* N.Y. C.P.L § 470.05(2). Moreover, New York Criminal Procedure Law provides that, so long as a jury trial waiver is in writing and signed by the defendant in person in open court in the presence of the court, "[t]he court must approve the execution and submission of such waiver unless it determines that it is tendered as a stratagem to procure an otherwise impermissible procedural advantage or that the defendant is not fully aware of the consequences of the choice he is making." N.Y. C.P.L. § 320.10.

Here, Lomaglio signed – in open court and in the court's presence – a written jury trial waiver. He did not raise an objection before the trial court at any time, even after the trial court ruled that the prosecution could introduce the victim's mother's testimony regarding the victim's "prompt outcry" about the abuse he suffered at Lomaglio's hands. Consequently, the Court finds that Lomaglio's jury trial waiver was upheld by the appellate court on an independent state law ground.

The Court must next consider "whether that independent state law ground is 'adequate,' on these facts, to preclude further review of the federal claim. Adequacy in this context requires an evaluation of 'the state interest in a procedural rule against the

9

circumstances of a particular case.'" *Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011) (quoting *Lee v. Kemna*, 534 U.S. 362, 387–87 (2002)). The Second Circuit has instructed courts to:

> [G]enerally assess the adequacy of a state ground of decision by examining whether the rule upon which the state court relied is "'firmly established and regularly followed,'" . . . keeping in mind that, in "exceptional cases," the "exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." . . . . To determine whether this case involves an exorbitant misapplication of a state rule, we look to see if the state's application serves a legitimate state interest.

*Downs v. Lape*, 657 F.3d 97, 102 (2d Cir. 2011) (internal citations omitted).

The Second Circuit has "held repeatedly that the contemporaneous objection rule is a firmly established and regularly followed New York procedural rule . . . ." *Downs*, 657 F.3d at 104. While firmly established and regularly followed procedural rules will typically be adequate to preclude federal review, there are nevertheless "exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." *Lee*, 534 U.S. at 376. After a thorough review of the record, the Court finds[2] no basis for deeming Lomaglio's case to be "within the small category" of "exceptional cases" in which an otherwise sound state rule is inadequate to bar

---

[2] In this regard, the Court has utilized the three "guideposts" identified by the Second Circuit to discern whether an application is "exorbitant" under the *Lee* standard: "(1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state case law indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had substantially complied with the rule given the realities of trial, and therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest." *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003) (internal quotation marks omitted). After considering the facts of the present action in light of these guideposts, the Court finds no reason to believe the application of the state procedural rule was so "exorbitant" or unreasonable as to merit the intervention of a federal court. *See, e.g., Ryan v. Gonzalez*, 568 U.S. 57, 75 (2013) (observing that AEDPA makes clear that habeas review is intended only as "a guard against extreme malfunctions of the state criminal justice systems, not a substitute for ordinary error correction through appeal . . . .").

10

federal review of a constitutional claim. *Whitley*, 642 F.3d at 287 (quoting *Lee*, 534 U.S. at 381–82)).

Lastly, having found the procedural default to be on independent state law grounds adequate to preclude federal review, the Court must assess whether the petitioner can "bypass" the procedural bar by establishing cause for the default and actual prejudice as a result of the alleged violation of federal law, or a fundamental miscarriage of justice. A petitioner can demonstrate cause and prejudice by showing that the basis for the claim was not reasonably available to counsel, that interference by state officials made compliance impracticable, or that the procedural default is the result of ineffective assistance of counsel. *Pazmini v. Colvin*, No. 18-CV-5361 (BMC), 2018 WL 6338773, at *2–3 (E.D.N.Y. Dec. 4, 2018) (quoting *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994)). A petitioner can show a miscarriage of justice by demonstrating that he is actually innocent of the crime for which he has been convicted. *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002).

As indicated above, Lomaglio brought post-conviction collateral proceedings in which he claimed that his counsel was ineffective for failing to advise him of the alleged import of the trial court's evidentiary ruling on the "prompt outcry" testimony. This claim is discussed in greater detail below. For the purposes of the present issue, it is sufficient to note that Lomaglio does not allege ineffectiveness for failing to object to the trial court's allocution, and therefore cannot rely on that here. *Pazmini*, 2018 WL 6338773 at *3. There is no other ground in the record to support a finding of cause and prejudice that would allow avoidance of the procedural bar. Further, Respondent observes, and Lomaglio does not contest, that Lomaglio cannot assert actual innocence because his sentencing transcripts reveal a post-

conviction admission of guilt. *See* Resp't Mem. of Law at 18 n.2. Lomaglio's habeas challenge to his jury trial waiver is therefore rejected as procedurally barred.

*Substantive Merits of Lomaglio's Claim*

Even if it were not procedurally barred, Lomaglio's claim that his jury trial waiver was not knowing and intelligent has no merit. Lomaglio states in his papers that "[t]his case is about whether Mr. Lomaglio had the right to know whether and how the prompt complaint motion should influence his decision to waive his right to [a jury trial]," and suggests that his jury trial waiver could not be knowing and intelligent without having that information available to him. Reply, 4 n.2, May 29, 2020, ECF No. 14; *see also* Pet'r Mem. of Law at 1. He maintains that the state courts' decisions rejecting his suggestion were contrary to and an unreasonable application of clearly established federal law that he was entitled to be aware of the "relevant and likely consequences" of his jury trial waiver. Pet'r Mem. of Law at 12–13 (citing, *inter alia*, *Brady v. United States*, 397 U.S. 742, 748 (1970)).

A principle is "clearly established Federal law" for § 2254 purposes when it is embodied in a Supreme Court holding framed at the appropriate level of generality. *Washington v. Griffin*, 876 F.3d 395, 403 (2d Cir. 2017) (quoting, *inter alia*, *Thaler v. Haynes*, 559 U.S. 43, 47 (2010)), *cert. denied*, 138 S. Ct. 2578. A state court decision is "contrary to" such clearly established law when the state court either has arrived at a conclusion that is the opposite of the conclusion reached by the Supreme Court on a question of law, or has "decided a case differently than the Supreme Court has on a set of materially indistinguishable facts." *Washington*, 876 F.3d at 403 (quoting *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)). An "unreasonable application" of such clearly established law occurs when the state court correctly identifies the governing legal principle but unreasonably

applies it to the facts of the particular case such that "the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Washington*, 876 F.3d at 403 (citation omitted).

Notwithstanding Lomaglio's argument, there is no clearly established federal law that indicates that the requisite knowledge of "relevant circumstances and likely consequences" to which a defendant is entitled prior to waiving his constitutional right to a jury trial includes knowledge of how a pending evidentiary ruling would provide insight into the fact-finder's view of the parties' credibility. The case upon which Lomaglio relies for his "relevant circumstances and likely consequences" language, *Brady v. United States*, 397 U.S. 742 (1970), involved a defendant's argument that his guilty plea – and "waiver of his right to trial before a jury or a judge" – was not voluntarily, knowingly and intelligently made. *Brady*, 397 U.S. at 748. Most relevant to the present case, in considering whether the defendant's waiver was intelligently made, the *Brady* court stated:

> Often the decision to [waive a constitutional right] is heavily influenced by the defendant's appraisal of the prosecution's case against him . . . . Considerations like these frequently present imponderable questions for which there are no certain answers; judgments may be made that in the light of later events seem improvident, although they were perfectly sensible at the time. The rule that a [waiver] must be intelligently made to be valid does not require that a [waiver] be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision . . . .

*Brady*, 397 U.S. at 756.

Similarly, Lomaglio admits that his decision to waive his right to a jury trial was made after "many discussions" with his trial attorney discussing "at length the various practical benefits that might with a decision to waive a jury trial . . . ." Ex. E at 6–7. Further,

13

the transcript of the hearing at which the waiver was executed shows that the trial court informed Lomaglio that he had an absolute right to a jury trial on the charges against him, that a jury trial meant that twelve persons from the community would be the fact-finders in the case and determine whether the prosecution had proven its case beyond a reasonable doubt, and that the alternative to a jury trial would be a bench trial in which the sitting judge would decide the legal and factual issues in the case. Ex. A at 2–3. The rule that Lomaglio's jury trial waiver must be intelligently made does not require that waiver to be vulnerable to later attack because Lomaglio now believes that he and his trial counsel did not correctly identify and assess every relevant factor entering into his decision.

Lomaglio's Ineffective Assistance of Counsel Claim

In addition to challenging his jury trial waiver, Lomaglio maintains that his counsel's advice was "constitutionally deficient" in the lead-up to his decision to waive his right to a jury trial, because trial counsel only discussed with him the positive consequences of his decision. For instance, Lomaglio's post-conviction motion to vacate was accompanied by an affidavit from Lomaglio admitting that he discussed with trial counsel such benefits of waiver as that a judge would be more likely to hold the prosecution to its burden of proof and less likely to be influenced negatively by the publicity of the case, the "salacious" allegations, or Lomaglio's decision not to testify at trial. Trial counsel did not inform Lomaglio, however, that the trial court's pending decision on the "prompt outcry" evidentiary motion would be an indication that the judge believed a rational trier of fact could conclude that the victim made "a prompt, timely, and possibly-credible complaint of sexual abuse." Pet'r Mem. of Law at 5. Lomaglio maintains that trial counsel's failure in this regard led him to waive a fundamental right that he claims he would never have waived

14

had he known the import of the "prompt outcry" ruling. Therefore, Lomaglio argues that he received the ineffective assistance of counsel.

The Sixth Amendment guarantees a criminal defendant the right to "reasonably effective assistance" of counsel. It is clearly established federal law that to establish ineffective assistance of counsel, a defendant must satisfy the two-prong test outlined in *Strickland v. Washington*, 466 U.S. 668 (1984). A defendant's failure to satisfy one prong of this two-pronged test relieves the court of any requirement to consider the other prong. *Strouse v. Leonardo*, 928 F.2d 548, 556 (2d Cir. 1991).

Under *Strickland*, the defendant must first demonstrate that his attorney's performance "fell below an objective standard of reasonableness" under the "prevailing professional norms." *Vadas v. U.S.*, 527 F.3d 16, 20 (2d Cir. 2007) (citing *Strickland*, 466 U.S. at 688). The reviewing court must be mindful of the variety of approaches effective attorneys might employ when dealing with a particular set of facts, and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Parisi v. U.S.*, 529 F.3d 134, 141 (2d Cir. 2008) (quoting *Strickland*, 466 U.S. at 689). Additionally, the reviewing court must "affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011). Because "there are countless ways to provide effective assistance in any given case," the burden is on the defendant to "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks and citation omitted).

Second, the defendant must demonstrate he was prejudiced by the ineffective conduct. *Strickland*, 466 U.S. at 687–88. That is, he must show there is a "reasonable

probability" that but for counsel's error, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "[T]he question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently; instead, [t]he likelihood of a different result must be substantial, not just conceivable." *Garner v. Lee*, 908 F.3d 845, 862 (2d Cir. 2018) (quoting *Harrington v. Richter,* 562 U.S. 86, 111–12 (2011)) (internal quotation marks omitted).

In the present case, the state courts' rejection of Lomaglio's ineffective assistance claim was neither clearly contrary to, nor an unreasonable application of, clearly established federal law. The Court need not consider here whether Lomaglio satisfied the prejudice prong of the *Strickland* standard because he so clearly fails to demonstrate that his trial counsel's performance was deficient.

The state trial court's decision and order denying Lomaglio's N.Y. C.P.L. § 440.10 motion to vacate provides a thorough explanation of the reasons why Lomaglio's ineffective assistance claim fails to demonstrate deficient performance:

> Now, after his conviction has been affirmed on appeal and with the benefit of hindsight, Defendant asks the trial court to cast aside the many valid considerations he himself deemed imperative to his decision to waive a jury trial and find that his former attorney was ineffective for failing to do that which was neither required, nor expected of him – advise Defendant that a future evidentiary ruling would reveal crucial information about the Court's thinking on the subject of the complainant's credibility . . . .
>
> Although Defendant stops short of alleging that the Court prejudged his guilt, he does assert that the Court's prompt outcry ruling exposed a predisposition to find prosecution witnesses credible before they even took the witness stand and that assertion is unsupported and untenable . . . . Defendant's claim that a trial court's legal rulings on evidentiary issues (rulings that are upheld on appeal as proper) necessarily reveal a predisposition of the judge to make certain credibility determinations offends the tenants of judicial conduct.

16

Defense counsel's lack of adherence to that sentiment certainly did not deprive Defendant of effective assistance . . . .

. . . [L]egal rulings by the court and credibility determinations by the fact-finder remain separate and distinct functions. Legal determinations regarding the admissibility of evidence under an exception to the hearsay rule are considered independently and without regard for the subsequent determination by the fact-finder as to what, if any, weight will be accorded the evidence presented.

* * * *

The [prosecution]'s motion to present testimony at Defendant's trial under the prompt outcry exception to the hearsay rule was granted in part and denied in part. Defendant's characterizations of the ruling as "adverse" to him, "favorable" to the People and "revelatory" as to future credibility determinations to be made by the Court, are misleading because the ruling could just as accurately be characterized as adverse to the People and favorable to the defendant. Notably, the People were not permitted to present evidence of a prompt complaint through the child's assistant principal. By extricating one half of a single evidentiary ruling from more than one year's worth of legal representation and an entire trial, Defendant conflates the significance of that part of one single ruling.

* * * *

In the context of the totality of the circumstances as of the time of counsel's representation, both the prosecution and defense made many motions in anticipation of Defendant's trial and the Court made a number of legal rulings . . . .

The vast majority of issues addressed that day was resolved in Defendant's favor . . . .

Thus, in addition to Defendant's own description of the extensive conversations he had with counsel over his decision whether to waive a jury trial, the record demonstrates that counsel served as a professional and skilled advocate . . . . [T]here was absolutely no basis, under the circumstances as of the time of counsel's representation, to advise Defendant that the Court had preconceived notions about the credibility of witnesses that might be called to testify.

Ex. L at 5–10.

In sum, trial counsel's performance cannot be found deficient because Lomaglio's contention that the "prompt outcry" ruling should have been a critical consideration in his decision to waive his right to a jury trial is insufficient to overcome the presumption that trial counsel's waiver advice "might be considered sound trial strategy." It is clear from the record that trial counsel represented Lomaglio with active and effective pre-trial motion practice, and vigorous advocacy during the trial. It is also clear that both trial counsel and Lomaglio himself legitimately believed that there were significant advantages of a bench trial over a jury trial in Lomaglio's case. Accordingly, the Court finds that Lomaglio's trial counsel's performance was not "constitutionally deficient."

## CONCLUSION

Based on the foregoing, the Court finds that Lomaglio's claim with respect to his jury trial waiver is procedurally barred, and that he has failed to show that his conviction was "contrary to," or involved an unreasonable application of, clearly established Federal law. 28 U.S.C. § 2254(d)(1). Accordingly, Lomaglio's application under 28 U.S.C. § 2254 [ECF No. 1] is denied. The Clerk of the Court is hereby ordered to close this case.

SO ORDERED.

Dated:	April 30, 2021
	Rochester, New York

				ENTER:

				_____
				CHARLES J. SIRAGUSA
				United States District Judge